**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

JOSEPH MAQUADE CHESLEY,

Plaintiff,

vs.

CITY OF MESQUITE at al.,

Defendants.

**CASE NO. 2:25-cv-00218-APG-MDC**

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S REBUTTAL EXPERT (ECF No. 112)**

Before the Court is the *Motion to Strike Plaintiff's Rebuttal Expert* (ECF No. 112) ("Motion") by defendants City of Mesquite, Edward Owen Dickie, Jesse Whipple, Karen Fielding, Paul Wanlass, and Kevin Parrish (collectively "moving defendants"). By their Motion, moving defendants request the Court strike plaintiff's rebuttal expert report by Bruce Isaacson ("Mr. Isaacson") of XYZ Professionals. For the reasons below, the Court **GRANTS in part** and **DENIES in part** the Motion.

**DISCUSSION**

**I. BACKGROUND**

This action arises from plaintiff's termination from employment as the Chief of the Mesquite Police Department in 2025. *ECF No. 86*. Plaintiff was employed in that role from approximately 2019 to 2025. *See id.*

Relevant here, the Court granted the parties' *First Amended Stipulation to Extend Expert and Dispositive Deadlines* (ECF No. 84) which set an initial expert disclosure deadline of March 18, 2026, and a rebuttal expert disclosure deadline of May 2, 2026. On March 18, 2026, moving defendants disclosed Steve Beller ("Mr. Beller") of B&F Services, LLC as an expert to testify and opine as to plaintiff's projected and forecasted benefit plan under the Nevada Public Employees' Retirement System ("NV PERS"). Moving defendants' disclosure also included a copy of Mr. Bellers' expert report dated March 18, 2026 ("Initial Report") (ECF No. 112-1). Mr. Bellers offers opinions regarding the estimated

amounts that plaintiff may be entitled in annual retirement benefits depending on the number of years of credited service achieved.

Plaintiff did not disclose any initial experts or produce any initial expert reports by the March 18, 2026, initial expert disclosure deadline. Instead, plaintiff disclosed Mr. Isaacson on May 1, 2026, as a rebuttal expert, to ostensibly rebut Mr. Beller's opinions. Plaintiff's disclosure included an expert report by Mr. Isaacson dated April 27, 2026 ("Rebuttal Report") (ECF No. 112-2). Moving defendants argue that Mr. Isaacson's opinions and Rebuttal Report are not true rebuttal opinions but present new theories and go towards plaintiff's case-in-chief, which plaintiff should have disclosed as an initial expert. Moving Defendants thus requests to strike Mr. Isaacson's Rebuttal Report.

## II. GENERAL LEGAL STANDARDS

Federal Rule of Civil Procedure 26(a)(2)(D)(ii) permits rebuttal expert testimony that is "intended solely to contradict or rebut evidence on the same subject matter identified" by an initial expert witness. *Id.* A rebuttal expert report is not the proper place for presenting new arguments or theories and instead must be restricted "to attacking the theories offered by the adversary's experts." *Downs v. River City Grp.,* LLC, No. 3:11-CV-00885-LRH, 2014 WL 814303, at *5 (D. Nev. February 28, 2014) (citations omitted) (internal quotation marks omitted). Instead, "[r]ebuttal expert reports necessitate a showing of facts supporting the opposite conclusion of those at which the opposing party's experts arrived in their responsive reports." *R & O Const. Co. v. Rox Pro Int'l Grp., Ltd.*, No. 2:09-CV-01749-LRH-LR, 2011 WL 2923703, at *2 (D. Nev. July 18, 2011) (citation omitted) (internal quotation marks omitted). Rebuttal reports, therefore, "are proper if they contradict or rebut the subject matter of the affirmative expert report." *Id.* (citation omitted). Otherwise, such opinions are considered improper affirmative opinions that should have been disclosed by the initial expert deadline. *See Benkirane v. Am. Fam. Connect Prop. & Cas. Ins. Co*., No. 2:20-CV-01451-JCM-EJY, 2022 WL 225266, at *4 (D. Nev. January 25, 2022). Courts will not strike experts and their reports where the failure to comply with the disclosure rules was substantially justified or harmless. *See* Fed. R. Civ. P. 37(c)(1). Under Rule

37(c)(1), a party that fails to comply with the rules is not permitted to use that information "unless the failure was substantially justified or harmless." In determining whether the error was substantially justified or harmless, the Court considers several factors, including: (1) prejudice or surprise to the party against whom the evidence is offered, (2) the ability of that party to cure the prejudice, (3) the likelihood of disruption of trial, and (4) bad faith or willfulness in not timely disclosing the evidence. *Liberty Ins. Corp. v. Brodeur*, 41 F.4th 1185, 1192 (9th Cir. 2022).

## III. ANALYSIS

Mr. Isaacson's Rebuttal Report both responds to Mr. Beller's opinions and offers new opinions. Mr. Beller's Initial Report states twelve (12) separate opinions about plaintiff's projected and forecasted benefits under NV PERS. *ECF No. 112-1*. In his Rebuttal Report, Mr. Isaacson largely agrees with Mr. Beller's opinions numbered 1 through 8 and 12 but takes issue with Mr. Beller's opinions numbers 9, 10 and 11. *ECF No. 112-2*. The Court finds that Mr. Isaacson's Rebuttal Report does not contain proper rebuttal opinions in several instances.

### A. Mr. Isaacson's Agreement With Mr. Beller Is Not Rebuttal Opinion

Mr. Isaacson's agreement with Mr. Beller's opinions numbered 1 through 8 and 12 is not a proper rebuttal opinion. A rebuttal expert report is properly disclosed when it challenges the evidence or theory of an opponent but not to establish a case-in-chief. *Donell v. Fid. Nat. Title Agency of Nevada,* No. 2:07-CV-00001-KJD, 2012 WL 170990, at *4-5 (D. Nev. January 20, 2012). More fully stated, "[t]he purpose of rebuttal testimony is to explain, repel, counteract or disprove evidence of an adverse party ... Or stated a bit differently, [t]he proper function of rebuttal evidence is to contradict, impeach or diffuse the impact of evidence offered by an adverse party." *Donell*, 2012 WL 170990, at *4 (citations omitted) (internal quotation marks omitted). Furthermore, Mr. Isaacson's agreement with Mr. Beller's opinions numbered 1 through 8 and 12 is tainted with new arguments attempting to bring in and bolster a prior undisclosed 2025 report ("2025 Report") that Mr. Isaacson prepared in connection with a separate state action.

**B. Mr. Isaacson's Reliance and Incorporation of 2025 Report Is Not Rebuttal Opinion**

In his Rebuttal Report, Mr. Isaacson states that he incorporates his 2025 Report by reference, in which he previously estimated plaintiff's damages at around $14,100,000. *ECF No. 112-2*. Mr. Isaacson further states that Mr. Beller's Initial Report validates the base income methodology he used in his prior 2025 Report, which he appears to employ again in his Rebuttal Report to increase plaintiff's damages to $14,373,183.00. Plaintiff, however, did not disclose or otherwise produce Mr. Isaacson's 2025 Report in this action. Mr. Isaacson's 2025 Report was produced in separate state action. While that state action was between the plaintiff and some of the moving defendants, the claims and damages asserted by plaintiff there were undisputedly different than the claims and damages asserted by plaintiff here, in this action.[1] Therefore, Mr. Isaacson's incorporation and reliance of the 2025 Report into his Rebuttal Report constitutes presentation of new arguments and theories and thus, not proper rebuttal opinion. *See Downs*, 2014 WL 814303 at *5.

**C. Mr. Isaacson Properly Rebuts Mr. Beller's Opinion No. 9**

As stated above, a proper rebuttal opinion attacks "the theories offered by the adversary's experts." *Downs*, 2014 WL 814303 at *5. Mr. Isaacson properly attacks Mr. Beller's opinion no. 9 in his Rebuttal Report. Mr. Beller's opinion no. 9 states:

> With 18 years with the City of Mesquite and based on Plaintiff's income for his last year of work with the City of Mesquite, the average of his highest three (3) earning years, it is estimated that Plaintiff would be entitled to an annual retirement benefit of approximately $124,729.00, commencing at age fifty-five (55).

---

[1] In their Reply, moving defendants represent that plaintiff's claims and damages sought in the state action were based on pre-termination conduct and differ from claims and damages plaintiff raises in this action, which are based on his termination. *See ECF No. 119 at 2*. The Court raised this matter during the September 22, 2026, hearing on moving defendants' Motion and plaintiff did not dispute moving defendants' representation. Further, while Mr. Beller's Initial Report vaguely identifies a "XYZ Professional's Report" under the list of litigation materials reviewed, his Initial Report did not discuss or offer any opinions regarding Mr. Isaacson's 2025 Report.

*ECF No. 112-1* at 11.

In his Rebuttal Report, Mr. Isaacson attacks Mr. Bellers' factual assertions, methodology, and conclusion. Specifically, Mr. Isaacson opines that Mr. Beller used plaintiff's wrong three-year earning window and therefore, Mr. Beller's opinion regarding plaintiff's annual benefit is incorrect, *i.e.*:

> In item (9) and the footnote thereto, Mr. Beller states that Plaintiff's three highest years of earnings would be 2024, 2025, and 2026. Plaintiff was terminated in January 2025. This is either an error or may relate to the Settlement Agreement and/or Memorandum of Understanding, documents whose validity or applicability we cannot confirm.
>
> Mr. Beller states that, if Plaintiff retires at age 55, he would be entitled to an annual retirement benefit of $124,729. Applying the Beller calculation method to Plaintiff's 2022-2024 W-2 earnings results in a retirement benefit at age 55 of $147,480 per annum. This is higher than projected by the Beller report….

*ECF No. 112-2* at 10.

By contrast, Mr. Isaacson does not attack Mr. Beller's opinions 10 and 11 but instead offers new, different opinions in response.

**D. Mr. Isaacson Does No Rebut Mr. Beller's Opinion Nos. 10 and 11**

Mr. Beller's opinion number 10 estimates that plaintiff's NV PERS annual retirement benefit would be approximately $173,320.00 if plaintiff continued in covered employment and with 25 years of credited service. *ECF No. 112-1* at 11. Mr. Beller's opinion number 11 provides an estimated retirement benefit of approximately $194,750.00 if plaintiff continued in covered employment and with 30 years of credited service. *Id.* While Mr. Isaacson's Rebuttal Report notes that Mr. Beller's estimations in those opinions were based on the incorrect 2024-2026 three-year earning window, Mr. Isaacson goes beyond attacking that discrepancy and offers new, alternative elements and considerations.

First, Mr. Isaacson does not attack Mr. Beller's opinions but instead offers an alternative approach:

> We understand and acknowledge the view expressed by Mr. Beller that NVPERS is a defined benefit plan. Employer's contributions, which we used in calculating damages, could skew the estimate of the value of retirement benefits. For an alternative approach, we could eliminate the Employer's contributions….as part of Mr. Chesley's overall income, and then add back a projection of the defined benefits he would receive. We follow this method below.

*ECF No. 112-2* at 11.

Mr. Isaacson further opines that plaintiff's damages and benefit calculation should include "Worklife Expectancy" of "projected income years into the future." *Id.* Mr. Isaacson describes this new, alternative calculation as "[a] rather complex estimate of Mr. Chesley's future income, based on his work history and demographics, with a full evaluation and weighting of assumptions, conservative vs. expansive approaches, and application of reasonable professional judgement…." *Id.* Mr. Beller's Initial Report does not discuss these elements or considerations. Mr. Isaacson also provides his own estimations based on his alternative calculation and prior figures from his 2025 Report to give a "final reconciliation" of plaintiff's damages that is much different than the numbers opined by Mr. Beller. *Id.* at 12.

In sum, Mr. Isaacson's does not attack Mr. Beller's opinions numbers 10 and 11 but instead presents new arguments and figures and is thus not a proper rebuttal opinion. *See Downs,* 2014 WL 814303 at *5.

**E. Appropriate Remedy**

Arriving at the appropriate remedy is complicated. On the one hand, FRCP 37(c)(1) is meant to "give[] teeth" to the expert disclosure requirements of Rule 26(a). *Yeti by Molly, Ltd. v. Deckers Outdoor Corp*., 259 F.3d 1101, 1106 (9th Cir. 2001). That generally means the sanction for failure to properly disclose an expert is exclusion, which is theoretically "self-executing" under Rule 37. *Id.* at 1107. However, exclusion is neither automatic nor fixed. Rule 37(c)(1) provides some wiggle room

admission where failure to comply with expert disclosures is substantially justified or harmless. Fed. R. Civ. P. 37(c)(1); *see also Yeti by Molly, Ltd.*, 259 F.3d at 1106.

Thus, the issue here is whether plaintiff's failure to disclose Mr. Isaacson and his Rebuttal Report as an initial expert report was "substantially justified or harmless." Fed. R. Civ. P. 37(c)(1). Defendants have the burden to establish substantial justification or harmlessness. *Yeti by Molly, Ltd.*, 259 F.3d at 1107 ("Deckers asserts that the burden of proving harm is on the party seeking sanctions; we disagree. Implicit in Rule 37(c)(1) is that the burden is on the party facing sanctions to prove harmlessness."). Such burden requires consideration of: (1) the prejudice or surprise to the party against whom the evidence is offered, (2) the ability of that party to cure the prejudice, (3) the likelihood of disruption of trial, and (4) bad faith or willfulness in not timely disclosing the evidence. *Liberty Ins. Corp.*, 41 F.4th at 1192.

There is nothing from the parties' briefs or the record to show that plaintiff acted in bad faith. During the hearing on moving defendants' Motion, plaintiff's counsel stated that he did not intend to disclose Mr. Isaacson as an initial expert. Counsel believed plaintiff did not need an expert to establish his damages because he has sufficient direct damage evidence and only intended to use Mr. Isaacson to respond to Mr. Beller's Initial Report. Plaintiff's counsel further stated that he did not represent plaintiff in the state action where Mr. Isaacson's 2025 Report was disclosed and did not know about that report.

While bad faith is lacking, moving defendants show that they were prejudiced and surprised by Mr. Isaacson's disclosure and Rebuttal Report. Moving defendants primarily argue prejudice relative to sequencing and preclusion from challenging or rebutting Mr. Isaacson's new opinions. As to sequencing, moving defendants argue that plaintiff had the obligation to disclose Mr. Isaacson and his Rebuttal Report regarding damages as an initial expert because damages are plaintiff's case-in-chief burden. Thus, plaintiff attained an advantage by disclosing Mr. Isaacson after receiving Mr. Beller's Initial Report. Moving defendants' argument has some support. Computation of damages is not only part of plaintiff's initial burden under Rule 26(a)(1)(A)(iii) but is also an essential element of his case-

in-chief for both his tort and contract claims. *See, e.g.*, *Reimer v. Kuki'o Golf & Beach Club, Inc*., No. CIV. 12-00408 LEK-BM, 2014 WL 1643260, at *4 (D. Haw. April 22, 2014) (in tort claims, plaintiff's burden of proof includes proving his damages); *Repwest Ins. Co. v. Praetorian Ins. Co.,* 890 F. Supp. 2d 1168, 1183 (D. Ariz. 2012) ("In an action on a contract plaintiff has the burden of proof to show, 1) a contract, 2) a breach, and 3) damages." (citation omitted)). That generally means that plaintiff could not offer Mr. Isaacson's opinions in his case-in-chief. *Lindner v. Meadow Gold Dairies, Inc.,* 249 F.R.D. 625, 636 (D. Haw. 2008). Instead, plaintiff could only offer Mr. Isaacson to rebut Mr. Beller in response to moving defendants' offering Mr. Beller in their case-in-chief. *See Donell*, 2012 WL 170990 at *5 ("A rebuttal expert witness may only testify after the opposing party's initial expert witness testifies.") (citing *Linder*, 249 F.R.D. at 636). Mr. Isaacson, however, is not entirely offering proper rebuttal opinion, as discussed above.

Per the relevant scheduling orders, all discovery and pretrial deadlines have passed. Further, the parties have each filed dispositive motions. Thus, moving defendants show prejudice because they are precluded from depositing Mr. Isaacson or offering a surrebuttal to his Rebuttal Report. However, there is an opportunity to cure such prejudice without disruption of trial. A trial has not been scheduled for this case. The parties' summary judgment motions (ECF Nos. 128, 129, 130) do not rely on any opinions offered by Mr. Isaacson. That said, the Court recognizes that curative measures come at a cost, which is necessarily another prejudice to moving defendants.

The Court not only has discretion when imposing discovery sanctions but is given "particularly wide latitude" regarding the nature of sanctions it may impose under Rule 37(c)(1). *Yeti by Molly, Ltd.,* 259 F.3d at 1106. Having considered the *Liberty Ins. Corp.* factors and exercising its wide discretion, the Court imposes the following alternative sanctions to address plaintiff's failure to timely disclose Mr. Isaacson and his Rebuttal Report as an initial expert:

1. Plaintiff may offer Mr. Isaacson's partial opinion and Rebuttal Report to rebut Mr. Beller's opinion number 9 should moving defendants offer Mr. Beller's opinion number 9 in their case-in-chief.
2. Plaintiff may not offer Mr. Isaacson's other opinions or the remainder of his Rebuttal Report in either his case-in-chief or in rebuttal to moving defendants' case-in-chief.
3. Alternatively, to balance the relevant factors, plaintiff may offer Mr. Isaacson's opinions and Rebuttal Report in their entirety if: (a) plaintiff makes Mr. Isaacson available to be deposed by moving defendants by **January 15, 2027**; and (b) plaintiff pays Mr. Isaacson's deposition fee. If plaintiff elects this alternative, he must timely file the notice ordered below and the Court will allow discovery to be reopened for this limited purpose. Moving defendants would also have the right to disclose a surrebuttal report to Mr. Isaacson's Rebuttal Report within 30 days of Mr. Isaacson's deposition.

The Court makes no determination whether Mr. Beller or Mr. Isaacson actually qualify as experts and would be permitted to offer testimony relative to the adjudication of the merits of this action.

## IV. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that moving defendants' Motion (ECF No. 112) is **GRANTED** in part and **DENIED** in part as set forth herein.

**IT IS FURTHER ORDERED** that:

1. Plaintiff may offer Mr. Isaacson's partial opinion and Rebuttal Report to rebut Mr. Beller's opinion number 9 should moving defendants offer Mr. Beller's opinion number 9 in their case-in-chief.
2. Plaintiff may not offer Mr. Isaacson's other opinions or the remainder of his Rebuttal Report in either his case-in-chief or in rebuttal to moving defendants' case-in-chief.

3. Alternatively, to balance the relevant factors, plaintiff may offer Mr. Isaacson's opinions and Rebuttal Report in their entirety if: (a) plaintiff makes Mr. Isaacson available to be deposed by moving defendants by **January 15, 2027**; and (b) plaintiff pays Mr. Isaacson's deposition fee. If plaintiff elects this alternative, he must timely file the notice described below. If plaintiff elects this alternative, the Court allows discovery to be reopened for this limited purpose and moving defendants shall have the right to disclose a surrebuttal report to Mr. Isaacson's Rebuttal Report within 30 days of Mr. Isaacson's deposition.

4. If plaintiff elects the alternative cure in Paragraph 3 above, he must file by **October 16, 2026**, a "Notice of Selection of Alternative Cure Re: 10/02/26 Order" indicating his election. Failure to file timely will preclude plaintiff from electing the alternative cure in Paragraph 3 above and the sanction at Paragraph 2 above will become effective.

DATED: October 2, 2026.

**IT IS SO ORDERED.**

Hon. Maximiliano D. Couvillier, III
United States Magistrate Judge